*1188 TEXTO COMPLETO DE LA SENTENCIA
Comparecen Elias Iván Marrero Betancourt y Florilda Betancourt (en adelante los recurrentes) y nos solicitar la revisión de la Resolución emitida por el Departamento de Asuntos del Consumidor (en adelante el DACO) el 20 de agosto de 2008, mediante la cual desestimó la querella presentada por éstos en contra del Consejo de Titulares del Condominio Magdalena Tower. Resolvió que los planteamientos de los recurrentes no fueron inicialmente presentados ante la Junta de Directores del condominio (en adelante la Junta); por tanto, esta parte no dio oportunidad para que el asunto fuera resuelto por la administración internamente.
Posteriormente, compareció la Junta para oponerse a la revisión solicitada. Arguye que los recurrentes no demostraron la existencia de razones que justifiquen nuestra intervención con la deferencia que poseen las determinaciones administrativas.
Así las cosas, con el beneficio de la comparecencia de las partes y contando con el derecho aplicable, procedemos a resolver.
I
El 21 de marzo de 2007, la parte recurrente presentó una querella ante el DACO por alegado hostigamiento en su contra por parte de la Junta. Además, solicitó que se ordenara la celebración de una asamblea para que se seleccionaran nuevos miembros, en vista de que quienes ocupaban cargos en dicho momento no estaban cumpliendo con sus deberes.
Luego, enmendaron la querella en tres ocasiones para incluir supuestos incidentes en los cuales se difama a la parte recurrente. Asimismo, para señalar situaciones que demostraban el alegado incumplimiento de la Junta, como por ejemplo: la falta de pago de la póliza del Fondo de Seguro del Estado, la imposición de una multa al condominio por los bomberos y el mal estado del condominio, ya que no ha sido atendido por éstos, entre otros.
El 13 de junio de 2007, la Junta celebró una asamblea. La recurrente, Florilda Betancourt, acudió para votar a nombre de su hijo, quien es el titular del apartamento 3-E. Esta no presentó el proxy, un poder notarial, ni documento alguno que acreditara que estaba autorizada a representar a su hijo. Por tanto, en esta asamblea, en la que se aprobó una derrama para cumplir con lo requerido por el Cuerpo de Bomberos, la Junta descontó el voto de ésta.
Seguido, el 15 de junio, los recurrentes procedieron a enmendar la querella ante el DACO alegando que se obstaculizó su derecho al voto. En tres ocasiones más se enmendó la querella para incluir señalamientos sobre alegado vandalismo, pagos de mantenimiento, problemas con ascensores, estacionamiento, entre otros.
En agosto de 2007, el DACO ordenó el archivo de la querella de los recurrentes por su incomparecencia a una vista administrativa. A petición de los recurrentes, el 19 de septiembre, el DACO reconsideró su decisión, pero les impuso una multa de $200.00. Solicitaron una segunda reconsideración, pero esta vez de la sanción económica, el DACO redujo la cuantía a $ 150.00.
*1189 El 29 de noviembre de 2007 se celebró otra asamblea en el condominio. Nuevamente, la recurrente, Florilda Betancourt, no presentó el proxy. Como consecuencia de ello, se privó a ésta de votar y, alegadamente, se suscitó un incidente que provocó la suspensión de la asamblea. En la próxima asamblea que fue celebrada el 20 de diciembre del mismo año, ésta sí presentó el proxy. Ahora bien, el titular del apartamento que ésta representa no se había presentado ante la Junta para evidenciar que era el nuevo dueño, por lo que ante la Junta, aún el dueño era el titular anterior, Sr. Abraham Rosario.
A partir de este momento, los recurrentes enmendaron en cuatro ocasiones adicionales la querella ante el DACO. Incluyeron quejas sobre supuesto hostigamiento en contra de la recurrente, Florilda Betancourt, el asunto del proxy, presentación de estado de cuenta del condominio y problemas con cerraduras, entre otras.
Cabe destacar que al mismo tiempo en que se lleva a cabo el procedimiento administrativo, en el Tribunal de Primera Instancia se tramitaba una orden de protección en contra de la recurrente, Florilda Betancourt, por parte de la Junta y de otros titulares.
Entre febrero y marzo de 2008, el DACO celebró vistas administrativas para dilucidar los planteamientos de los recurrentes. Considerada la evidencia testifical y documental presentada por ambas partes, resolvió mediante Resolución que:

“Claramente, la mayor parte de lo que aquí se reclama responde a un problema entre vecinos. La parte querellante solicita el cese y desista del patrón de hostigamiento por parte del presidente, señor Braulio Ortiz. Sin embargo, en contra de la parte querellante ya se han presentado en el Tribunal de Primera Instancia dos querellas bajo la Ley 284 de Acecho, y mediante las mismas se han emitido dos órdenes de. protección en contra de la querellante...

Quedó evidenciado que la parte querellante ha establecido un patrón de hostigamiento hacia varios de los residentes del condominio...

La parte querellante al presentar sus enmiendas, y posteriormente las múltiples enmiendas a la misma, no puede ir en contra de sus propios actos. Quedó demostrado, mediante el testimonio y la prueba existente en el expediente administrativo, que la querellante hostigó y acechó a la señora Melba y al señor Braulio Ortiz, presidente, razón por la cual el tribunal expidió en ambas ocasiones órdenes de protección a favor de estas dos personas. La querellante solicita a este Departamento el cese y desista de la conducta del presidente, señor Braulio Ortiz. Por lo anteriormente discutido, se desestima la querella en cuanto a la solicitud de cese y desista de la conducta del presidente hacia la querellante. ”

En torno a los planteamientos de alegada negligencia, el DACO resolvió primeramente que la imposición de una multa al Condominio por el Cuerpo de Bomberos no implica que automáticamente la Junta haya sido negligente. Además, resolvió que los recurrentes debieron acudir inicialmente ante la Junta y no ante el DACO. Indicó que “[sfegún lo establece la ley, la parte querellante, antes de presentar una querella ante este Departamento, tiene que realizar una reclamación a la Junta de Directores. ”
La querellante admitió en sala que ella no le realizó ninguna reclamación a la Junta, ni verbal ni escrita. Según lo admitido por ésta, tan pronto surge una situación, la parte querellante acude al Departamento y presenta su querella o enmienda.
La parte querellante no brindó oportunidad a que el asunto fuese atendido por la administración internamente, antes de recurrir a este Departamento; de modo que la parte querellada diera cumplimiento al *1190 objetivo de la disposición a la que hacemos mención. Al no existir fundamento para que la parte querellante sea eximida del procedimiento, procede que ésta haga o culmine su reclamación, según sea el caso, dentro de los términos indicados.
En síntesis, el DACO. resolvió que los recurrentes no agotaron los mecanismos disponibles para la tramitación de sus quejas sobre las condiciones del condominio y cualquier otra. Por tanto, tampoco atendió este tipo de planteamientos esbozados por los recurrentes.
Sobre el derecho al voto, esta agencia explicó en su Resolución que la Junta no tenía constancia de que el recurrente, Elias Marrero Betancourt, hubiese adquirido el apartamento. Tampoco de que hubiese autorizado a su madre para comparecer y votar en su nombre ante las asambleas que celebre la Junta. La recurrente no quiso presentar documentos por considerarlos de índole privado; sin embargo, sin esta documentación, “la Junta de Directores no puede darle cumplimiento al Artículo 38B en cuanto a la representación por proxy”. Conforme a lo expuesto por el DACO, una vez se presenta ante la Junta la escritura de compraventa del nuevo titular, entonces podrá proceder a participar de las asambleas. En este caso, mediante la presentación de un proxy en cada asamblea, la recurrente, Florilda Betancourt, podrá votar a nombre de su hijo. Mientras que si presentara un poder notarial, ello sería suficiente y no tendría que presentar un proxy en cada asamblea.
Por último, el DACO resolvió que los recurrentes habían sido temerarios al ocupar innecesariamente “el tiempo de la administración y la justicia”. Además que habían observado una actitud contumaz y de frivolidad, por lo que debían satisfacer la cantidad de $1,000.00 por concepto de honorarios de abogado en virtud del Artículo 42 de la Ley de Condominios.
Inconformes con la desestimación de su querella y con la imposición de honorarios de abogado, los recurrentes acuden ante este Tribunal y nos plantean que:

“EL HON. DACO ERRÓNEAMENTE DETERMINÓ .QUE LA QUERELLANTE, FLORILDA BETANCOURT, HABÍA ESTABLECIDO UN PATRÓN DE HOSTIGAMIENTO EN CONTRA DE VARIOS RESIDENTES DEL CONDOMINIO.

EL HON. DACO DETERMINÓ ERRÓNEAMENTE QUE LA QUERELLANTE, FLORILDA BETANCOURT, NO LE HIZO UNA PETICIÓN FORMAL A LA JUNTA DE CONDÓMINES DE SUS RECLAMOS.

EL HON. DACO DETERMINÓ ERRÓNEAMENTE QUE EL PRESIDENTE DE LA JUNTA DE CONDÓMINES ACTUÓ CORRECTAMENTE AL NEGARSE A DEJAR A LA QUERELLANTE VOTAR EN LA ASAMBLEA POR SU HIJO POR FALTA DE UN PODER DE SU HIJO, ELÍAS IVÁN MARRERO BETANCOURT, EL TITULAR DEL APARTAMENTO 3-E.

EL HON. DACO DETERMINÓ ERRÓNEAMENTE DENEGANDO LA SOLICITUD DE LA QUERELLANTE PARA QUE SE NOMBRARA A UN SÍNDICO PARA ADMINISTRAR EL CONDOMINIO MAGDALENA TOWER.

EL HON. DACO DETERMINÓ ERRÓNEAMENTE QUE LA QUERELLANTE, FLORILDA BETANCOURT, NO SE QUEJÓ CON LA JUNTA DE CONDÓMINES DEL CONDOMINIO SOBRE EL EMPLEADO DE MANTENIMIENTO, FREDDY BUENO, Y POR TANTO, NO LO PUEDE HACER AHORA CUANDO LA QUERELLANTE SÍ SE QUEJÓ CON LA JUNTA DE CONDÓMINES.

EL HON. DACO DETERMINÓ ERRÓNEAMENTE QUE EL PRESIDENTE DE LA JUNTA DE CONDÓMINES DEL CONDOMINIO CUMPLIÓ CON LOS REQUERIMIENTOS DE LOS BOMBEROS DE PUERTO RICO CUANDO EN REALIDAD NO LO HIZO.

*1191
EL HON. DACO DETERMINÓ ERRÓNEAMENTE QUE EXISTIÓ TEMERIDAD EN LA RADICACIÓN DE LA QUERELLA EN EL PRESENTE CASO. ”

Arguyen los recurrentes que la situación de las órdenes de acecho es una aislada. Que la recurrente, Florilda Betancourt, siempre ha sido reconocida como buena vecina y que, de hecho, el mismo Presidente de la Junta que ahora se queja, firmó una carta, en la que se halagaba a ésta por su gran cooperación para con los asuntos del condominio.
Sobre sus reclamos, los recurrentes sostienen que enviaron cartas a la Junta, en las que informaban cuestiones de mantenimiento y de otras cosas más. Sin embargo, la Junta no las atendió. Por dicha razón, tuvieron que acudir ante el DACO.
En torno al derecho al voto, señalan los recurrentes que el Presidente de la Junta solicitó ante el Registro de la Propiedad los documentos relacionados al apartamento 3-E. Estos claramente establecían que el recurrente, Elias Marrero Betancourt, hijo de Florilda Betancourt, es el titular. Además, esta última sí presentó un proxy y presentó un poder el 8 de marzo de 2007. No obstante, la Junta ha sido quien no ha celebrado ninguna asamblea. Señalan que ha transcurrido más de un año desde que se celebró la última.
De otra parte, respecto al nombramiento de un síndico para que administrara el condominio, señalan que la Junta no ha realizado los pagos de servicios a tiempo. En una ocasión, cortaron el servicio de energía eléctrica. Por esta misma razón, otros residentes del condominio han radicado querellas ante el DACO.
Por último, respecto a la determinación de temeridad e imposición de honorarios de abogado, únicamente indican que sus querellas tenían méritos. Por tanto, no debió determinarse lo contrario.
Por su parte, la Junta se opone a la revisión de la Resolución por virtud de la presunción de corrección de las decisiones administrativas. Sostiene que no se establecieron las razones por las que la norma de deferencia debe ceder. En este caso, la determinación se basó en evidencia sustancial.
Expuesta la posición de las partes, procedemos con la discusión del derecho aplicable.
II
- Revisión Judicial -
El Tribunal Supremo de Puerto Rico ha indicado que las determinaciones de hechos de organismos y de agencias administrativas públicas tienen a su favor una presunción de regularidad y corrección, por lo que deberán ser respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Empresas Toledo v. Junta, Opinión del 31 de agosto de 2006, 2006 J.T.S. 147. Es por esto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son ellas las que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. Otero Mercado v. Toyota, 163 D.P.R. 716 (2005). Ahora bien, esta norma de deferencia, de ningún modo puede afectar el alcance de la facultad de revisión de los tribunales. Pudín Medina v. Retiro, Opinión del 2 de agosto de 2007, 2007 J.T.S. 151.
La Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 del 12 de agosto de 1988, 3 L.P.R.A. § 2101 et seq (en adelante LPAU), dispone específicamente que:

“El Tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el Tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán 
*1192
revisables en todos sus aspectos. ”

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que éstas desempeñen sus funciones conforme a la ley. García Reyes v. Cruz Auto Corp., Opinión del 21 de mayo de 2008, 2008 J.T.S. 112; Torres v. Junta Ingenieros, 161 D.P.R. 696 (2004); Miranda v. C.E.E., 141 D.P.R. 775, 786 (1996). Cuestionada una determinación administrativa, los tribunales apelativos tienen “la obligación de examinar la totalidad de la prueba sometida a la agencia según consta en el expediente administrativo”. López Echevarría v. Administración, Opinión del 30 de agosto de 2006, 2006 J.T.S. 146; Assoc. Ins. Agencias v. Com. Seg. P.R., 144 D.P.R. 425 (1997). Para que un tribunal revisor pueda decidir que la determinación de una agencia no está fundamentada en evidencia sustancial, se tiene que demostrar que hay otra prueba en el expediente administrativo que claramente reduce o menoscaba el peso de la prueba que sostiene la determinación administrativa. Esta prueba tiene que llevar al tribunal a concluir que la agencia fue arbitraria y que la determinación no responde a una evaluación razonable de toda la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway, 148 D.P.R. 420 (1999); Misión Industrial v. Junta de Planificación, 146 D.P.R. 64 (1998); Hilton Hotels v. Junta Salario Mínimo, 14 D.P.R. 670, 687 (1953). Si efectivamente el expediente administrativo carece de esa evidencia sustancial, los tribunales apelativos estaríamos obligados a revocar o a modificar la determinación recurrida.
Debemos señalar que al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. Otero Mercado v. Toyota, supra. El tribunal revisor, tomando en cuenta la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí, distinguirá entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa. García Reyes v. Cruz Auto Corp., supra. Cuando una agencia interpreta el estatuto, que viene llamado a poner en vigor de forma tal que produce resultados contrarios al propósito de esa ley, dicha interpretación no prevalece. Id. Cuando no se pueda hallar una base racional para explicar la decisión administrativa, el tribunal podrá sustituir el criterio de la agencia por el propio. Misión Industrial v. Junta de Planificación, 146 D.P.R. 64 (1998). Igualmente, cuando la agencia haya actuado de forma ilegal, arbitraria o caprichosa, de manera que su decisión constituya un abuso de discreción. Hatillo Cash & Carry v. ARPE, Opinión del 27 de mayo de 2008, 2008 J.T.S. 117; Torres Acosta v. Junta Examinadora de Ingenieros, 161 D.P.R. 696, 707 (2004); Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004). Aun cuando exista más de una interpretación razonable de los hechos, los tribunales deberán sostener la decisión de la agencia y no sustituirán su criterio por el de la agencia. Asoc. Vecinos v. U. Med. Corp., 150 D.P.R. 70 (2000).
III
- Honorarios de Abogado -
La Sección 3.21(c) de la L.P.A.U., 3 L.P.R.A. § 2170a, faculta a la agencia administrativa en su función cuasi-judicial a imponer honorarios de abogado, en los siguientes términos:

“(c) Imponer costas y honorarios de abogado, en los mismos casos que dispone la Regla 44 de Procedimiento Civil, según enmendada, Apéndice III del Título 32. ”

De igual forma, la Regla 26.3 del Reglamento de Procedimientos Adjudicativos del DACO, Reglamento Núm. 6219 del 17 de octubre de 2000, faculta al funcionario que presida la vista para imponer honorarios de abogado. También establece que la imposición de éstos estará regida por la Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1.
La referida regla de Procedimiento Civil provee para la imposición de honorarios de abogado como sanción contra quien por su temeridad ha hecho necesario un pleito que pudo evitarse, que lo prolongue *1193 innecesariamente, o que produzca la necesidad de que otra parte incurra en gestiones evitables. Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. 695 (1999). La determinación de temeridad es de índole discrecional, por lo que sólo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción. Flores Berger v. Colberg, Opinión del 20 de mayo de 2008, 2008 J.T.S. 110; Colón Santos v. Cooperativa, Opinión del 25 de febrero de 2008, 2008 J.T.S. 53; Puerto Rico Oil v. Dayco, 164 D.P.R. 486 (2005).
IV
En el presente caso se cuestiona la desestimación de una querella instada por los recurrentes, la cual fue enmendada en múltiples ocasiones. Además se solicita la revocación de la imposición de honorarios de abogado. Para fines de nuestra discusión, analizaremos los primeros seis errores en conjunto.
Los recurrentes han tenido constantes discrepancias con la Junta por la manera en que se administra el condominio y por la supuesta desatención a la estructura. En específico, la recurrente, Florilda Betancourt, tuvo algunos altercados con la Junta, razón por la cual se interpuso una orden de protección en su contra. La controversia medular estriba en la falta de algún documento que evidencie que el recurrente, Elias Marrero Betancourt, adquirió el apartamento 3-E y que su madre estaba autorizada para representarlo en las asambleas. El DACO resolvió que la recurrente, Florilda Betancourt, hostigó a los miembros de la Junta; no acudió ante ellos inicialmente para presentar sus quejas, sino que acudió al foro administrativo directamente; y que no acreditó de manera fehaciente la adquisición del apartamento y su capacidad para ejercer el derecho al voto a nombre de su hijo.
Examinado el expediente, surge que el DACO le reconoció a los recurrentes el derecho a que su querella fuera ventilada, pese a que fue originalmente desestimada por su incomparecencia a la primera vista pautada. Las partes tuvieron la oportunidad de presentar prueba a su favor y de refutar la prueba contraria. Revisada la prueba testifical y documental que tuvo ante sí y a la luz de derecho aplicable, el DACO resolvió desestimar la querella, no sin antes aclarar que realmente esta situación era un problema de vecinos. Es decir, que debió ser resuelto como tal internamente en el condominio.
Cuando se impugne una determinación administrativa, será el recurrente quien tiene el peso de demostrar que el foro administrativo actuó de forma ilegal, arbitraria, caprichosa o en abuso de discreción. En este caso no encontramos que el DACO errara en su aplicación de la ley; así tampoco consideramos que fue arbitrario en su determinación ni que actuó en abuso de discreción.
Ciertamente, los recurrentes no demostraron ante la Junta la adquisición del apartamento 3-E. De hecho, según aceptado por la recurrente Florilda Betancourt en la vista, no presentó documentación al respecto por considerarla privada. Y en el recurso, aceptó que el Presidente de la Junta tuvo que recurrir ante el Registro de la Propiedad para verificar la titularidad del referido apartamento.
Dispone la Ley de Condominios en su Artículo 38b, 31 L.P.R.A. § 1293b-2, que: “///« asistencia a las reuniones del Consejo de Titulares será personal o por representación legal o voluntaria, bastando para acreditar esta última un escrito firmado por el titular. El poder tendrá que estar fechado e indicará las fechas de la asamblea para la que se autoriza la representación, excepto que se trate de un poder general otorgado ante notario. Por Reglamento o por acuerdo del Consejo de Titulares se establecerá la forma de determinar la autenticidad de la firma del titular antes de comenzar la asamblea. ” (Enfasis nuestro).
Se desprende de los hechos que la Junta celebró tres asambleas y solamente en una la recurrente, Florilda Betancourt, llevó un proxy, el cual no fue aceptado por no haberse previamente evidenciado el cambio de titular del apartamento. La disposición antes citada es clara al especificar la necesidad de demostrar la autorización que posee el representante. Asimismo dispone que la Junta está facultada para establecer el método de verificación de titularidad. En este caso fueron los recurrentes quienes no cumplieron con el requisito *1194 establecido. Por tanto, basado en la ley, la Junta no podía permitir que la recurrente, Florilda Betancourt, ejerciera el derecho al voto. El DACO actuó correctamente al avalar la actuación de la Junta.
Respecto a todas las demás quejas sobre problemas con los ascensores, techos, etc., los recurrentes no acudieron ante la Junta para plantearles sus preocupaciones. Así quedó consignado en la Resolución del DACO, quien tuvo la oportunidad de escuchar el testimonio de la recurrente, Florilda Betancourt. Ésta aceptó que cuando surgía alguna situación prefería acudir directamente ante el foro administrativo. Así las cosas, no existía decisión a ser revisada por la agencia, ya que la Junta no había podido actuar sobre las quejas.
Por último, en torno a la imposición de honorarios de abogado, el DACO resolvió que los recurrentes actuaron temerariamente. Basado en el derecho aplicable y en nuestro análisis del caso, los recurrentes acudieron ante el foro administrativo como consecuencia de la animosidad existente entre las partes y no por temeridad. Ciertamente, los recurrentes debieron acudir en primera instancia ante la Junta. No obstante, no encontramos que los recurrentes actuaran de forma contumaz. Por tanto, revocamos la imposición de honorarios de abogado, pues en nada contribuye a que las relaciones entre vecinos mejoren. Ahora bien, los recurrentes quedan apercibidos de que los problemas de la comunidad deben resolverse siguiendo los procedimientos de ley y del reglamento, so pena de sanciones, tales como la imposición de costas y de honorarios de abogado.
V
Por los fundamentos anteriormente expuestos, modificamos la Resolución impugnada a los únicos fines de eliminar la cuantía impuesta por concepto de honorarios de abogado.
Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada Secretaria del Tribunal de Apelaciones